UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SWAPNIL REGE and SWAPSTAR CAPITAL LLC,<br><br>　　　　　　Defendants,<br><br>　　and<br><br>REEMA REGE,<br><br>　　　　　　Relief Defendant. | Case No.  21-CV _____<br><br>ECF Case<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Commodity Futures Trading Commission ("CFTC" or "Commission"), 140 Broadway, 19th Floor, New York, NY 10005, by and through its attorneys, alleges as follows against the following Defendants and Relief Defendant, whose names and last known addresses are set forth below:

a.  Swapnil Rege (Defendant)
　　6 Forest Ct N
　　Monmouth Junction, NJ 08852-3124

b.  SwapStar Capital, LLC (Defendant)
　　1 Hawthorne Rd
　　North Brunswick, NJ 08902

c.  Reema Rege (Relief Defendant)
　　6 Forest Ct N
　　Monmouth Junction, NJ 08852-3124

## I.   **SUMMARY**

1.        From at least September 2019 to the present (the "Relevant Period"), Defendant Swapnil Rege, ("Defendant Rege"), both individually and through his company SwapStar Capital LLC ("Defendant SwapStar," and together with Defendant Rege, "Defendants"), solicited and received funds from at least 25 individuals (together, "Account Holders") based on promises to pay fixed rates of return on unsecured loans or for the stated purpose of making investments in securities.  Defendants executed written "Investment Advisory Agreements" or "Private Loan Agreements" with many of the Account Holders, which typically provided that Defendants were fiduciaries for the Account Holder, that Defendants would pay a fixed rate of interest during an agreed-upon period in exchange for the loan or investment, and that Defendants were authorized to make investments on behalf of the Account Holders.  Defendants then used a portion of the solicited funds to actively trade commodity futures and commodity options through accounts Defendants owned or that were nominally owned by Defendant Rege's spouse and/or his father, but were controlled by Defendant Rege.  Defendants also took a portion of the funds and misappropriated them, using those funds for personal expenses and to repay other Account Holders to whom they owed money.  Finally, Defendants failed to fully disclose to the Account Holders that Defendant Rege was barred from executing any commodity futures or commodity options trades for a period of three years, pursuant to a July 18, 2019 Commission order that was entered in settlement of fraud charges ("2019 Order").  As a result, Defendants have engaged in, are engaging in and, unless restrained and enjoined will continue to engage in, acts and practices which constitute violations of the 2019 Order.

2.        In 2019, the Commission filed an administrative action against Defendant Rege for violating Section 6(c)(1) of the Commodity Exchange Act ("Act"), 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a)(1)–(3) (2018), 17 C.F.R. § 180.1(a)(1)–(3) (2018), of the Commission

Regulations ("Regulations") promulgated thereunder.  The Commission found that Defendant

Rege engaged in a fraudulent scheme to mismark the valuations for certain interest rate swaps on

the books of his employer, a commodity pool operator ("CPO") located in Connecticut.

Defendant Rege mismarked the valuations in an attempt to artificially inflate the profits of the

CPO, in order to meet performance metrics that would qualify him for an (artificially inflated)

performance bonus.  As a result of the mismarking scheme, Defendant Rege caused the CPO to

overstate its reported performance to pool participants, which in turn resulted in overstated

management fees.  The valuations could not be and were not realized by the CPO.  Further,

Defendant Rege engaged in numerous steps to conceal his misconduct.  *In re Rege*, CFTC No.

19-14, 2019 WL 4267850, at *1-3 (July 18, 2019).

3.       Defendant Rege agreed to settle the matter simultaneously with the Commission's

filing and consented to the entry of the 2019 Order, which found that Defendant Rege violated

Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a)(1)–(3), 17 C.F.R.

§ 180.1(a)(1)–(3) (2018).  *Id.* at *4.

4.       As part of the settlement, Defendant Rege was ordered to cease and desist from

further violations of Section 6(c)(1) of the Act and Regulation 180.1(a)(1)–(3) and to pay a civil

monetary penalty in the amount of $100,000.  Defendant Rege also agreed to pay disgorgement

of $600,000 plus pre-judgment interest in the amount of $49,170.84, representing the gains

received in connection with his violations.  *Id.* at *5.

5.       In addition, Defendant Rege was prohibited from, directly or indirectly, engaging

in trading on or subject to the rules of any registered entity (as that term is defined in Section

1a(40) of the Act, 7 U.S.C. §1a(40) (2012)), for a period of: (a) at least three years after the date

of entry of the 2019 Order; and (b) until after payment and satisfaction in full of the

disgorgement and civil monetary penalty amounts and any applicable interest, and all registered entities were to refuse him trading privileges during that period.  *Id*.

6.      Finally, Defendant Rege agreed to cooperate fully and expeditiously with the Commission, including the Commission's Division of Enforcement, in any current or future Commission investigation or action relating to the subject matter of the 2019 Order.  *Id.*

7.      In flagrant disregard of the 2019 Order, in or about September 2019, Defendants solicited funds from Account Holders for the represented purpose of investing in securities on their behalf.  In soliciting the Account Holders, Defendants made material misrepresentations and omissions, including:  (1) Account Holder funds would be used for investment purposes; (2) Account Holder funds would be invested in securities; (3) Account Holders would receive a fixed monthly, quarterly, or annual return, in some cases as high as 40% to 60%; and (4) Account Holders could redeem their funds immediately or on short notice.  In making these representations, Defendants failed to disclose that they were soliciting funds, at least in part, to trade commodity futures and commodity options.  Defendant Rege also failed to disclose that he was barred from trading any commodity futures or commodity options as a result of the 2019 Order.

8.      In addition, during the Relevant Period, Defendants misappropriated Account Holders' funds for their personal benefit, including to pay for personal expenses and to make payments to other investors and lenders in a manner akin to a Ponzi scheme.  Defendants used Account Holders' funds in this manner without disclosure to, or authorization from, Account Holders.

9.      Defendants have not returned all funds to Account Holders.

10.     By the aforementioned conduct, Defendants have engaged, are engaging in, or are about to engage in practices that violate the provisions of the Act and Regulations, including: Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2020).

11.     Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel compliance with the Act and Order.  In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including but not limited to, trading and registration bans, restitution, disgorgement, and such other relief as this Court may deem necessary or appropriate.

## II.     JURISDICTION AND VENUE

12.     **Jurisdiction**.  This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2018) (federal question jurisdiction) and 28 U.S.C. § 1345 (2018), which provides that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress.  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), provides that district courts have jurisdiction to hear actions brought by the Commission for injunctive relief and to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

13.     **Venue**.  Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants are found in, inhabit, or transact business in this District, and because the acts and practices in violation of the Act and of the 2019 Order have occurred within this District, among other places.

Case 3:21-cv-19337-ZNQ-TJB   Document 1   Filed 10/26/21   Page 6 of 20 PageID: 6

### III.   THE PARTIES

14.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act and the Regulations.  The Commission maintains its Eastern Regional Office at 140 Broadway, 19th Floor, New York, New York 10005.

15.     Defendant **Swapnil Rege** is an individual who resides in Monmouth Junction, New Jersey.  Previously, Mr. Rege was a Portfolio Manager on the U.S. Rates Desk at the CPO from June 2015 until his termination in April 2017.  Defendant Rege has never been registered with the Commission in any capacity.

16.     Defendant **SwapStar Capital LLC** is a limited liability company with its principal place of business in North Brunswick, New Jersey.  It was founded in January 2019 by Defendant Rege and he is the sole owner.  SwapStar Capital LLC has never been registered with the Commission in any capacity.

17.     Relief Defendant **Reema Rege** is an individual who resides in Monmouth Junction, New Jersey and is the spouse of Swapnil Rege.  Relief Defendant Rege has never been registered with the Commission in any capacity.

### IV.   OTHER RELEVANT ENTITIES

18.     The Chicago Mercantile Exchange ("CME") is a commodity exchange operated by the CME Group Inc. ("CME Group"), located in Chicago, Illinois, with its servers located in the Northern District of Illinois.  At all relevant times, the CME was a designated contract market under Section 5 of the Act, 7 U.S.C. § 7 (2018), and a "registered entity" under Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018).  CME lists for trading E-mini S&P 500 Futures, E-mini Nasdaq 100 Futures, and E-mini Russell 2000 Index Futures, among other futures and options contracts.

6

19.      Commodity Exchange, Inc. ("COMEX") is a commodity exchange which also at all relevant times was a designated contract market under 7 U.S.C. § 7 (2018), and a "registered entity" under 7 U.S.C. § 1a(40) (2018).  COMEX lists for trading gold futures, silver futures, and other precious metals contracts.  COMEX's headquarters is located in New York, New York.  COMEX is owned and operated by the CME Group.

## V.      FACTS

### A.      The 2019 Order

20.      On July 18, 2019, the Commission instituted proceedings against Defendant Rege pursuant to Section 6(c) and (d) of the Act.  Defendant Rege was charged with engaging in a fraudulent scheme to mismark the valuations for certain interest rate swaps on the books of his employer, a commodity pool operator, in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2018).  *In re Rege*, at *4.

21.      On the same day, the Commission accepted Defendant Rege's offer of settlement, and issued the 2019 Order against Defendant Rege which, among other things, ordered Defendant Rege to pay a civil monetary penalty of $100,000, and to comply with his agreement to pay disgorgement of $600,000 plus pre-judgment interest in the amount of $49,170.84, among other sanctions and undertakings.  *Id. *5.

22.      The 2019 Order also:  (1) found that, during the Relevant Period, Defendant Rege violated Section 6(c)(l) of the Act, 7 U.S.C. § 9(1) (2012), and Regulation 180.l(a)(l)-(3), 17 C.F.R. § 180.l(a)(l)-(3)(2018); and (2) ordered that Rege cease and desist from violating Section 6(c)(l) of the Act, 7 U.S.C.§ 9(1) (2012), and Regulation 180.l(a)(l)-(3), 17 C.F.R. § 180.l(a)(l)-(3) (2018).  *Id. *4.

23.      In addition, the 2019 Order prohibited Defendant Rege from, directly or indirectly, engaging in trading on or subject to the rules of any registered entity (as that term is

defined in Section 1a(40) of the Act, 7 U.S.C. §1a(40) (2012)), for a period of (a) at least three years after the date of entry of the 2019 Order; and (b) until after payment and satisfaction in full of the disgorgement and civil monetary penalty amounts and any applicable interest, and all registered entities were to refuse him trading privileges during that period. *Id.* *5.

24.      More specifically, Defendant Rege agreed that he would not, for that period: (a) enter into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2018)[1]), for Defendant Rege's own personal account or for any account in which Defendant Rege had a direct or indirect interest; (b) have any commodity interests traded on his behalf; (c) control or direct the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests; (d) solicit, receive, or accept any funds from any person for the purpose of purchasing or selling any commodity interests; (e) apply for registration or claim exemption from registration with the Commission in any capacity, or engage in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2018); and/or (f) act as a principal (as that term is defined in Regulation 3.l(a), 17 C.F.R. § 3.1(a) (2018)), agent or any other officer or employee of any person (as that term is defined in Section la(38) of the Act, 7 U.S.C. § la(38) (2012)), registered, required to be registered, or exempted from registration with the Commission except as provided for in Regulation 4.14(a)(9). *Id.* *6-7.

**B.      Defendants' Solicitation of Account Holders**

25.      During the Relevant Period, Defendants solicited funds from at least 25 Account Holders for the purpose of making investments, including investments in the securities markets.

---

[1] Pursuant to Regulation 1.3, 17 C.F.R. §1.3 (2020), the term "commodity interests" includes, among other things, commodity futures and commodity options contracts.

26.     Defendants solicited Account Holders in person and through phone and/or e-mail communications.

27.     Defendants executed written "Investment Advisory" or "Private Loan Agreements" agreements with many Account Holders.  Some of these agreements were in Defendant Rege's name individually, and some were in the name of Defendant SwapStar. Through these agreements, Defendants promised to pay fixed rates of return in either the form of unsecured loans or through making investments.

28.     As part of the solicitations, Defendants falsely represented to Account Holders that:  (1) Account Holder funds would be used for investment purposes; (2) Account Holder funds would be invested in securities, including equities; (3) Account Holders would receive a fixed monthly, quarterly, or annual return, in some cases as high as 40% to 60%; and (4) Account Holders could redeem their funds immediately or on short notice.

29.     Defendants did not use Account Holders' funds solely for the purpose of investing or purchasing securities as they had represented to the Account Holders.  Instead, from at least April 2021 to the present, Defendants used a portion of the funds in these accounts to trade futures and options on a registered entity, including E-mini S&P 500 and E-mini Nasdaq 100 futures and options.  Defendants failed to advised Account Holders that at least a portion of their funds would be used to invest in commodity interests.

30.     Defendants knowingly or recklessly made these material misrepresentations and omissions to induce Account Holders to lend to or invest with them, and Account Holders relied upon these material misrepresentations and omissions in deciding to lend or invest.

31.     Defendants also misappropriated Account Holders' funds to pay for personal expenses.  Further, Defendants also misappropriated Account Holders' funds to transfer among

other Account Holders in a manner akin to a Ponzi scheme.  Defendants used Account Holders'

funds in this manner without disclosure to, or authorization from, Account Holders.

32.     In their solicitation of prospective Account Holders, Defendants did not disclose

that they intended to use Account Holders' funds to trade commodity futures and commodity

options, to pay for personal expenses, or to pay returns to other Account Holders.

33.     Further, Defendants failed to disclose that Defendant Rege was barred from

trading any commodity futures or commodity options products as a result of the 2019 Order.

34.     At various times during the Relevant Period, one or more Account Holders asked

Defendant Rege about the 2019 Order.  Defendant Rege failed to fully disclose the scope of the

2019 Order.

**C.     Defendants' Trading of Commodity Futures and Commodity Options in Violation of 2019 Order**

35.     During the Relevant Period, Defendants executed trades on behalf of at least 25

Account Holders.

36.     Defendants directed many Account Holders to provide Defendant Rege with a

limited power of authority ("POA") to their accounts at other financial institutions, including

accounts held by Futures Commission Merchants that were used for trading commodity futures

and commodity options.  Using the limited POA, Defendant Rege logged into the accounts as

himself, his spouse, or his father (i.e., rather than using the Account Holders' usernames and

passwords) and executed trades, including trades in commodity interests.

37.     From approximately 2017 or 2018 through approximately September 2019,

Defendant Rege used a joint account that he held with his spouse at Fidelity Brokerage Services

LLC ("Fidelity") to execute trades.  This account held a limited POA with approximately 15 or

20 other accounts.  In or around September 2019, after entry of the 2019 Order, Fidelity

terminated the limited POA on the joint account held by Defendant Rege and his spouse, and

Fidelity also cancelled accounts held by various Account Holders.  Several Account Holders

asked Defendant Rege why Fidelity cancelled the accounts, but Defendant Rege told them to call

Fidelity because he did not know why.

38.     After Fidelity terminated the limited POA on Defendant Rege's joint account,

many of the Account Holders transferred their accounts to TD Ameritrade Inc. ("TDA"), which

also allowed trading through a limited POA.  In addition, several individuals transferred funds

totaling approximately $600,000 to $700,000 to Defendant Rege's bank account, and asked him

to transfer the funds to a Fidelity account that Defendant Rege held individually, and then trade

their funds using his own account.

39.     In October 2019, three months after the 2019 Order, Defendant Rege opened an

account with TDA in the name of his spouse, Relief Defendant Reema Rege.  Defendant Rege

provided his own email address and phone number as contact information on the account.  The

purpose of the account was to continue trading for Account Holders for whom he had traded at

Fidelity.  A number of the Account Holders provided a limited POA to Defendant Rege's

spouse; others requested that Defendant Rege return their funds and he did so.  By mid-2020,

approximately 15-20 Account Holders had provided Defendant Rege with a limited POA at

TDA.

40.     From approximately October 2019 until at least January 2021, Defendant Rege

also executed trades for himself, using the same TDA account in the name of his spouse that

contained funds provided by other Account Holders.

41.     In August 2020, Defendant Rege opened an Interactive Brokers LLC ("Interactive

Brokers") account in the name of his spouse, Relief Defendant Reema Rege.  The email address

on the account opening documents contained a slightly modified version of Defendant Rege's name.  The account was funded in March 2021.

42.     Following the closure of Defendant Rege's individual Fidelity account and return of some funds at the request of certain Account Holders, Defendant Rege transferred the remaining Account Holder funds to accounts at TDA and Interactive Brokers.

43.     In August 2020, a TDA joint account owned by Account Holder-1 ("AH-1") and AH-1's spouse received a total of $660,000 in internal transfers from the TDA account owned by Defendant Rege's spouse.  The AH-1 joint account also received a $30,000 wire from a bank account titled "Swapnil Rege."  AH-1 shared login credentials on his account with Defendant Rege to allow him to execute trades, and Defendant Rege executed trades in the account.  The combined funds in this account were used to actively trade commodity futures contracts, among other products.

44.     In September 2020, AH-1 opened an account with Interactive Brokers in his own name and another account under a corporate name that was associated with AH-1's email address.  AH-1 provided Defendant Rege with access to these accounts as well to allow him to execute trades, and Defendant Rege executed commodity futures contracts in AH-1's corporate account.

45.     In December 2020, a TDA joint account held by Account Holder-2 ("AH-2") and his spouse received a series of internal transfers of various stocks from Relief Defendant Reema Rege's account valued at approximately $200,000; in January 2021, the AH-2 joint account received $100,000 in cash from Relief Defendant Reema Rege's account.  The combined funds were used to actively trade commodity futures contracts, among other products.

46.     In December 2020, Account Holder-3 ("AH-3") and his spouse opened a TDA joint tenants account; Account Holder-4 ("AH-4") opened a TDA individual account; and Account Holder-5 ("AH-5") and his spouse opened a TDA joint tenants accounts.

47.     In February 2021, Defendant Rege opened an individual TDA account in the name of his father.  Defendant Rege's father also held an account with another Futures Commission Merchant that was used to trade futures products.  The TDA account under Defendant Rege's father's name listed an external bank account on file that appears to be associated with Defendant Rege, and had an email address that contains a slightly modified version of Defendant's name.

48.     The AH-4 and AH-5 accounts received internal transfers or wire deposits from the account held by Defendant Rege's father during June to October 2021 totaling $130,000.  The AH-4 and AH-5 accounts also received wire deposits from "Swapnil J. Rege" totaling $45,500.

49.     Some or all of these TDA accounts, and others held by Account Holders, were "linked" to the account of Defendant Rege's spouse, which allowed a user to access multiple accounts with a single user ID and password.  In this manner, Defendant Rege used his spouse's account to access and execute trades, including trades of commodity futures products, in the Account Holders' accounts.

50.     In or around the Spring of 2021, TDA sent letters to Account Holders notifying them that the POA on the account in the name of Relief Defendant Reema Rege was terminated.

51.     In March 2021, Defendant Rege closed the TDA account in the name of his spouse, Relief Defendant Reema Rege.

52.     Between April and July 2021, there were five corporate accounts opened with Interactive Brokers associated with AH-1's email address, and one IRA account affiliated with

another individual with the same last name as AH-1.  At least two of these accounts were used

for trading commodity interests on various dates between April 2021 and September 2021.

Defendant Rege had access to and executed trades in these accounts.

53.     In addition, from April 2021 through September 2021, Defendant Rege accessed

the Interactive Brokers account in the name of Relief Defendant Reema Rege to actively trade

futures products, including E-mini S&P 500 and E-mini Nasdaq 100 futures and options, among

other products.  As such, Defendant Rege traded commodity interests on or subject to the rules of

a CFTC-registered entity, including the Chicago Mercantile Exchange.

54.     Defendants never provided Account Holders with account statements referencing

their trading of funds in commodity futures and commodity options.

**D.     Defendants Misappropriated Account Holders' Funds**

55.     During the Relevant Period, Defendants failed to achieve sufficient profits from

trading commodity futures and commodity options (or other trading) necessary to meet the fixed

rates of returns promised to the Account Holders.  As a result, Defendants used funds from

certain Account Holders to pay back other Account Holders in a manner akin to a Ponzi scheme.

56.     Defendants also misappropriated Account Holders' funds for personal use and

expenses.

57.     In or about July and August 2021, Defendants transferred funds obtained from

Account Holders to Relief Defendant Reema Rege's Interactive Brokers account.  Relief

Defendant Reema Rege was not legally entitled and had no legitimate claim to those funds.

58.     One or more Account Holders have demanded the return of their funds invested

with or loaned to Defendants, but have been unable to access their funds.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT

## COUNT ONE

### FRAUD BY DECEPTIVE DEVICE OR CONTRIVANCE – VIOLATION OF SECTION 6(c)(1) OF THE ACT, 7 U.S.C. § 9(1) (2018) AND REGULATION 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2020)

59.     Paragraphs 1 through 58 are re-alleged and incorporated herein by reference.

60.     7 U.S.C. § 9(1) makes it unlawful for any person, directly or indirectly, to:

[U]se or employ, or attempt to use or employ, in connection with any swap, or a contract of sale of any commodity in interstate commerce, or for future delivery on or subject to the rules of any registered entity, any manipulative or deceptive device or contrivance, in contravention of such rules and regulations as the Commission shall promulgate by not later than 1 year after [July 21, 2010, the date of enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act] . . . .

61.     17 C.F.R. § 180.1(a) provides, in part:

It shall be unlawful for any person, directly or indirectly, in connection with any swap, or contract of sale of any commodity in interstate commerce, or contract for future delivery on or subject to the rules of any registered entity, to intentionally or recklessly: (1) Use or employ, or attempt to use or employ, any manipulative device, scheme, or artifice to defraud; (2) Make, or attempt to make, any untrue or misleading statement of a material fact or to omit to state a material fact necessary in order to make the statements made not untrue or misleading; (3) Engage, or attempt to engage, in any act, practice, or course of business, which operates or would operate as a fraud or deceit upon any person . . . .

62.     During the Relevant Period, as described above, Defendants violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3) by, among other things, in connection with swaps, contracts of sale of commodities in interstate commerce, or for future delivery, making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit material facts necessary in order to make statements made not untrue or misleading, such as the following:  (1) Account Holder funds would be used for investment purposes; (2) Account Holder funds would be invested in securities, including equities; (3)

Account Holders would receive a fixed monthly, quarterly, or annual return, in some cases as high as 40% to 60%; (4) Account Holders could redeem their funds immediately or on short notice; and (5) failing to disclose that Defendant Rege was barred from trading any commodity interests as a result of the 2019 Order.  Defendants intentionally or recklessly made these material misrepresentations and omissions to induce Account Holders to lend to or invest with them, and Account Holders relied upon these material misrepresentations and omissions in deciding to lend or invest.

63.     During the Relevant Period, as described above, Defendants also violated 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3) by, among other things, using funds solicited from Account Holders to trade commodity futures for personal benefit, including to pay for personal expenses and to pay returns to other Account Holders in a manner akin to a Ponzi scheme.

64.     Defendants engaged in the acts and practices described above intentionally or recklessly.

65.     Defendant Rege committed the acts, omissions, and/or failures alleged herein within the scope of his employment, agency, or office with Defendant SwapStar.  Therefore, Defendant SwapStar is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2020), as principal for Defendant Rege's acts, omissions, or failures as alleged herein.

66.     Each act of:  (1) using or employing, or attempting to use or employ, a manipulative device, scheme, or artifice to defraud; (2) making, or attempting to make, untrue or misleading statements of material fact, or omitting to state material facts necessary to make the statements not untrue or misleading; and (3) engaging, or attempting to engage, in any act,

practice, or course of business, which operated or would operate as a fraud or deceit upon any person, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)–(3).

## COUNT TWO

### VIOLATION OF THE COMMISSION'S 2019 ORDER

67.     The allegations set forth in paragraphs 1 through 58 are re-alleged and incorporated herein by reference.

68.     On 2019, the Commission entered the 2019 Order, which required Defendant Rege to cease and desist from violating Section 6(c)(1) of the Act and Regulation 180.1(a)(1)–(3), and imposed other obligations on Defendant Rege as further described at paragraphs 21 through 24 above.

69.     Following entry of the 2019 Order and during the Relevant Period, Defendant Rege violated the 2019 Order by engaging in the conduct described in paragraphs 1 through 58 above, by continuing to trade on or subject to the rules of any registered entity in violation of the cease and desist provisions of the 2019 Order.

70.     Each violation of the Commission's 2019 Order, including but not limited to those specifically alleged herein, constitutes a separate and distinct violation of the 2019 Order.

## VII.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to its own equitable powers, enter:

A.  Orders of preliminary and permanent injunction prohibiting Defendants from violating the Commission's Order of July 18, 2019, and from violating Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1(a)(1)–(3), 17 C.F.R. § 180.1(a)(1)–(3) (2020);

B. An order of permanent injunction restraining Defendants and any of their affiliates, agents, servants, employees, successors, assigns, attorneys, and persons in active concert with them from:

1) Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2020)), for Defendants' own personal accounts or for any account in which Defendants have a direct or indirect interest;

2) Having any commodity interests traded on Defendants' behalf;

3) Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

4) Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

5) Applying for registration or claim exemption from registration with the Commission in any capacity, or engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and/or

6) Acting as a principal (as that term is defined in Regulation 3.l(a), 17 C.F.R. § 3.1 (a) (2020)), agent or any other officer or employee of any person (as that term is defined in Section la(38) of the Act, 7 U.S.C. § la(38) (2018)), registered, required to be registered, or exempted from registration with the Commission except as provided for in Regulation 4.14(a)(9).

C. A civil penalty against Defendants in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599–600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2020), for each violation of the Act and Regulations, as described

herein;

D. An order prohibiting Defendants from trading on or subject to the rules of any entity registered with the Commodity Futures Trading Commission;

E. An order directing Defendants and Relief Defendant and any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices which constituted violations of the Act, as described herein, and interest thereon;

F. An order directing Defendants and Relief Defendants to make full restitution to every lender or investor whose funds were received by them as a result of acts and practices which constituted violations of the Act, as described herein, and interest thereon from the date of such violations; and

G. Such other and further equitable or remedial ancillary relief as the Court may deem appropriate, including costs and attorneys' fees.

*     *     *

## VIII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.


Dated:  October 26, 2021                                    Respectfully submitted,

                                                            **ATTORNEYS FOR PLAINTIFF**

                                                            **COMMODITY FUTURES
                                                              TRADING COMMISSION**

                                                            Manal M. Sultan
                                                            Deputy Director
                                                            Commodity Futures Trading Commission
                                                            Division of Enforcement

                                                            By: /s/ Patryk Chudy
                                                            Patryk Chudy, Chief Trial Attorney
                                                            Benjamin J. Rankin, Trial Attorney (*pro hac
                                                            vice* admission application to be filed)

                                                            COMMODITY FUTURES
                                                              TRADING COMMISSION
                                                            140 Broadway, 19th Floor
                                                            New York, NY 10005
                                                            Phone: (646) 746-9700
                                                            Fax: (646) 746-9938
                                                            pchudy@cftc.gov
                                                            brankin@cftc.gov